**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LIMITLESS ACCESSORIES, INC., an Illinois Corporation, | |
| Plaintiff, | Case No. 23-cv-15525 |
| v. | |
| KOSTEL LLC, an Illinois Limited Liability Company, ALBINOS LLC, an Illinois Limited Liability Company, CONSTANTIN CALUGHER, an individual, OLEKSANDR POLYULYAK, an individual, AMERICAN ALLIANCE GROUP INC., an Illinois Corporation, OLEKSANDR OSOKIN, an individual AND OSMOS INC. an Illinois corporation, | **DEMAND FOR A JURY TRIAL** |
| Defendants. | |

**COMPLAINT**

Plaintiff, Limitless Accessories, Inc. ("Plaintiff"), by and through its attorneys, Taft Stettinius & Hollister LLP, and for its complaint against Kostel LLC ("Kostel"), Albinos LLC ("Albinos"), Constantin Calugher ("Calugher"), Oleksandr Polyulyak ("Polyulyak"), American Alliance Group Inc. ("American"), Oleksandr Osokin ("Osokin") and Osmos Inc. ("Osmos" and collectively, "Defendants") alleges and states as follows:

**PRELIMINARY STATEMENT**

1.     Plaintiff is a reputable vape products retailer and industry leader. Plaintiff sells vape products directly to consumers through its websites and the digital platforms it controls.

2.     Vape products are designed for individuals to consume nicotine and other similar substances. Vape products vary in type, style, design, shape and utility. Common products include

1

e-cigarettes, vapes, vape pens, pods and mods. The vape industry and its retail channels are rapidly growing.

3. Plaintiff enjoys common law trademark protection under federal and state law. Plaintiff's Alternative Pods mark is referenced herein as the "Alternative Pods & design" trademark, which is displayed below:



4. In 2016, Plaintiff hired Defendants to assist with website design and to help Plaintiff with online promotion and marketing of vape products under "Alternative Pods & design" trademark.

5. The parties' arrangement worked well and in 2021, Plaintiff and Defendants entered into a more formal business arrangement that included profit sharing with the goal of increasing Plaintiff's sales. Plaintiff's business became increasingly profitable, which benefitted all parties.

6. Despite what was a profitable arrangement, Defendants began scheming to create deceptively similar and competing websites and online platforms, to trade on the goodwill in Plaintiff's "Alternative Pods & design" trademark, and to use Plaintiff's trade secrets and knowledge to create new businesses to compete with Plaintiff.

7. In February 2023, it all came to a head when Defendants, without warning, absconded with Plaintiff's websites subject to the business arrangement. Defendants improperly obtained control over Plaintiff's sales operations, set up competing businesses and posted false statements about Plaintiff, including one of its websites and the products it sells.

8.      As Plaintiff evaluated the damage Defendants caused, it discovered that Defendants had been plotting to destroy and/or compromise Plaintiff's customer relationships and disrupt Plaintiff's businesses for some time.

9.      As of February 2023 (and likely for some time before that), Defendants used Plaintiff's trademarks and confidential, proprietary and/or trade secret information without its consent and in a manner that caused significant confusion among consumers to directly compete with Plaintiff, to solicit Plaintiff's customers and to otherwise benefit Defendants' new businesses.

10.     Evidence of the willful nature of Defendants' conduct include Defendants creating a competing website on or about February 7, 2023 with a nearly identical name to the one being operated by Plaintiff, which Defendants were hired to build, with the intent of stealing the goodwill that Plaintiff developed over the years in its trademarks. Plaintiff's website is located at web address: https://alternativepods.com/ ('Alternative Pods'). Defendants' infringing website is located at web address: https://www.alternative-pods.com/ ("Alt. Dash Pods").

11.     In adopting a nearly identical mark and domain name for identical products and services, Defendants intentionally deceived and continues to deceive consumers, including Plaintiff's customers. Defendants confuse consumers as to the source of Defendants' products. Such intentional deception and confusion has diverted sales from Alternative Pods to Alt. Dash Pods and damaged Plaintiff's goodwill and reputation.

12.     Defendants' conduct is willful, deliberate, malicious and tortious in nature and has caused Plaintiff serious and irreparable harm and therefore, must be stopped.

13.     Plaintiff brings the following claims against Defendants: (i) Federal Trademark Infringement, Unfair Competition, False Designation of Origin and False Advertising (15 U.S.C. § 1125(a)); (ii) Common Law Trademark Infringement; (iii) Common Law False Designation of

Origin; (iv) Cybersquatting (15 U.S.C. § 1125(d)); (v) Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836); (vi) Misappropriation of Trade Secrets under the Illinois Trade Secrets Act (765 ILCS 1065/1 *et seq.*); (vii) Unfair competition under the Illinois Deceptive Trade Practice Act (815 ILCS 510/1 *et seq.*); (viii) Violation of the Illinois Consumer Fraud and Deceptive Businesses Practices Act (815 ILCS 505/1 *et seq.*); (ix) Business defamation/trade libel; and (x) Tortious Interference with Prospective Business Relationship.

## PARTIES

14.     Plaintiff is an Illinois corporation formed in 2011. Its principal place of business and warehouse is located at 411 Country Club Drive, Bensenville, Illinois (the "Warehouse").

15.     Defendant, Kostel, is an Illinois limited liability company with its principal place of business in Mount Prospect, Illinois.

16.     Defendant, Calugher, is an individual residing in Barrington, Illinois. Calugher is the registered agent and manager of Kostel.

17.     Defendant, Albinos, is an Illinois limited liability company with its principal place of business in Long Grove, Illinois.

18.     Defendant, Polyulyak, is an individual residing in Rolling Meadows, Illinois. Polyulyak is the registered agent and manager of Albinos.

19.     Defendant, American, is an Illinois corporation.

20.     Defendant, Osmos, is an Illinois corporation.

21.     Defendant, Osokin, is an individual residing in Palatine, Illinois and he is the registered agent and president of American and Osmos.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction to hear this action in accordance with 28 U.S.C. § 1331 because Plaintiff's claims arise, in part, under the Trademark Act of 1946,

commonly known as the Lanham Act, 15 U.S.C. § 1051, *et seq.*, including Federal Trademark Infringement, Unfair Competition, False Designation of Origin and False Advertising under 15 U.S.C. § 1125(a) and Cybersquatting under 15 U.S.C. § 1125(d) as well as claims under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.* and related state law claims involving misappropriation of trade secrets under the Illinois Trade Secrets Act, unfair competition under the Illinois Deceptive Trade Practices Act and related Illinois common law.

23.     This Court has jurisdiction to enter declaratory judgment and relief under 28 U.S.C. §§ 2201, 2022.

24.     The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as each of the claims in this action is so closely related that they form part of the same case or controversy.

25.     This Court has personal jurisdiction over Defendants because they purposefully conduct business in Illinois, including within this district. Defendants sell goods and provide services over the internet to Illinois consumers. In addition, Defendants have continuous contact with Illinois, have misappropriated confidential, proprietary and trade secret information physically located on servers and other infrastructure in Illinois, and Defendants' actions have otherwise violated Illinois law.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts, events or omissions giving rise to the claims in this action occurred in this district.

**FACTUAL BACKGROUND**

**I.     Plaintiff's Business, Its Mark and the Onset of the Parties' Relationship.**

27.     On June 1, 2019, Plaintiff created the Alternative Pods website to sell vape products online to consumers. A screenshot of the website for Alternative Pods dated October 30, 2023 is attached as Exhibit 1.

5

28.     Since the launch of Alternative Pods, Plaintiff has used Alternative Pods' name and mark in connection with its business. The Alternative Pods' name and mark has become synonymous with Plaintiff's corporation name, Limitless Accessories, Inc., as the source of vape products.

29.     Since 2019, Plaintiff has consistently sold and distributed vape products to online consumers throughout the United States under the "Alternative Pods & design" trademark.

30.     A majority of the vape products Plaintiff sells are sold under the "Alternative Pods & design" trademark through Alternative Pods, which has been Plaintiff's main source for selling vape products.

31.     The Warehouse is where Plaintiff stores its inventory and where its employees gather and ship the products directly to its consumers.

32.     To sell vape products online under the "Alternative Pods & design" trademark, Plaintiff obtained the required tobacco license and is in compliance with applicable state and federal laws.

33.     Plaintiff also registered under the Prevent All Cigarette Trafficking Act (the "PACT Act") federally and in 35 states, including Illinois, in accordance with 15 U.S.C §§ 375-76. This registration extends to any website Plaintiff operates and sells vape products, including those sold on its website under the "Alternative Pods & design" trademark.

34.     In 2016, Plaintiff hired Defendants to assist with website design and to help Plaintiff with online promotion and marketing of vape products.

35.     As the parties' business arrangement became more profitable, Defendants began to work exclusively with Plaintiff and Defendants began working directly out of the Warehouse.

36.     Defendants continued to support Plaintiff's business through various marketing efforts and became increasingly involved in day-to-day operations.

37.     However, Plaintiff is the owner of Alternative Pods' marks, Alternative Pods' website and all proprietary and confidential information related to conducting business through Alternative Pods.

## II.     The Creation of VapeHoop and ZiipStock.

38.     Following the creation of Alternative Pods and with the intent of broadening Plaintiff's customer base, increasing its sales and expanding its business portfolio, Plaintiff directed Defendants to create an additional website to sell vape products.

39.     In March 2021, Plaintiff directed Defendants to create the website VapeHoop ("VapeHoop"). VapeHoop's web address is: https://www.vapehoop.com/.

40.     In May 2021, Polyulyak brought a website ZiipStock ("ZiipStock") to Plaintiff's attention as another way to increase Plaintiff's sales. ZiipStock's web address is: https://ziipstock.com/. ZiipStock, VapeHoop and Alternative Pods are collectively referred to as the "Websites."

41.     ZiipStock was previously owned by Albinos, which did not have a license to sell vape products.

42.     On May 25, 2021, Plaintiff purchased ZiipStock from Albinos. A copy of the $2,500 check issued to Albinos for payment in full for the website is attached as Exhibit 2.

43.     From May 2021 through early February 2023, ZiipStock exclusively served Plaintiff's business.

## III.     The Profit Split and Plaintiff's Customer Databases.

44.     In May 2021, in furtherance of their business arrangement, the parties entered into an oral agreement whereby Kostel (through Calugher) and Albinos (through Polyulyak) would

continue to assist in selling vape products for Plaintiff in exchange for a profit split (the "Profit Split"). Kostel and Albinos' earnings from the Profit Split were reported on Form-1099.

45.     Under the Profit Split, the parties agreed to distribute profits from the Websites as follows: (i) for Alternative Pods, Plaintiff and Kostel split profits 50/50; (ii) for VapeHoop, Albino received 40%, Plaintiff received 30%, and Kostel received 30%; and (iii) for ZiipStock, Albino received 40%, Plaintiff received 30%, and Kostel received 30%.

46.     While Defendants received profits generated by the Websites, they did not share in the losses stemming from the Websites or any of the operating expenses.

47.     Defendants did not pay rent for the Warehouse, nor did they contribute to the utilities, payroll or taxes related to the Websites.

48.     In September 2021, Plaintiff, at the suggestion of Calugher and Polyulyak, hired Osokin as an independent contractor to assist with graphic design for the Websites. Osokin received weekly payments from Plaintiff for his services through his company, Osmos.

49.     Prior to Defendants' wrongful conduct, Plaintiff maintained and closely held customer databases for each of the Websites. The data contains information, such as customer names, emails, money spent on each Website, the products they purchased and other relevant information that is used to streamline Plaintiff's business and maintain customer relationships.

50.     Prior to Plaintiff's involvement with Defendants, the customer databases contained information for roughly 20,000 customers.

51.     The customer databases are valuable because they allow Plaintiff to collect, process and organize purchasing data to increase sales. For example, the customer databases allow Plaintiff to determine how much inventory to buy based on which products its customers are purchasing from the Websites.

52.     The customer databases are password protected and stored on the respective platforms for each Website. The customer databases include proprietary information and valuable trade secrets and are highly confidential. Access to the databases was restricted to only key personnel.

## IV.    Defendants' Creation of Alt. Dash Pods and False Statements to Mislead Plaintiff's Customers and Divert Sales to Defendants.

53.     Despite the success of the Websites, on February 5, 2023, Defendants abruptly quit working for Plaintiff.

54.     The next day, on February 6, 2023, Plaintiff discovered it was unable to modify anything on the Websites because Defendants changed the passwords, preventing Plaintiff from being able to access the Websites.

55.     While Plaintiff was eventually able to regain access to the domain for Alternative Pods on February 7, 2023, Plaintiff was forced to build an entirely new e-commerce platform and transfer the domain (Alternative Pods) to new the platform for it to become operational. Plaintiff's access to VapeHoop and ZiipStock remains blocked by Defendants.

56.     Plaintiff also discovered that Defendants changed the merchant accounts associated with the Websites. Merchant accounts are online cash registers that facilitate sales from an online retailer to its online customers. By blocking Plaintiff's access to the merchant accounts, Defendants were unable to receive any of the profits from its sales.

57.     On February 8, 2023, Plaintiff discovered that Defendants created an entirely new website, Alt. Dash Pods, and prominently displayed Plaintiff's "Alternative Pods & design" trademark to sell vape products and unfairly compete with Plaintiff. A screenshot of Defendants' infringing website dated October 30, 2023 is attached as Exhibit 3.

58.     Defendants' website has a virtually identical domain name as Plaintiff's website, (*i.e.*, "Alternative-Pods" *versus* "Alternative Pods").

59.     Defendants created this infringing and counterfeit website to deceive consumers, including Plaintiff's customers, into mistakenly believing that Defendants were acting on behalf of Plaintiff, or that they were affiliated with, sponsored by or endorsed by Plaintiff. As a result, Defendants have deceptively intercepted and/or diverted sales to Defendant.

60.     At the time Alt. Dash Pods was created, neither Kostel nor Albinos had a tobacco license to sell vape products online.

61.     Upon information and belief, Kostel and Albinos still do not have a tobacco license to sell vape products online. By operating Alt. Dash Pods without the appropriate licenses, Defendants are in violation of state and/or federal law.

62.     Additionally, Defendants' illegal activities, all done while using Plaintiff's "Alternative Pods & design" trademark, have deceived consumers and constitute a number of false advertising violations for operating without a license.

63.     Moreover, Defendants began making false statements about Plaintiff, its products and its website (Alternative Pods) directly to Plaintiff's customers, to unfairly compete with Plaintiff and redirect sales from Alternative Pods to businesses controlled by Defendants.

64.     For example, on February 8, 2023, Defendants used Plaintiff's email address, sales@alternativepods.com (which, at the time, Defendants still had access to) and sent an email blast to Alternative Pods' customers with the subject line: "Urgent!! Alternativepods Customers!! Please READ carefully!!" A copy of the February 8, 2023 email (the "Email Blast") is attached as Exhibit 4. Below is the subject of the Email Blast.

Attention all our valued customers. Our Website became a victim of cyber attack. We are working hard to recover back. All your accounts and information are secured and saved under new domain address: alternative-pods.com - website name! Try to avoid the website until you will get a new email!

For all your inconvenience you can use the following code and save with us!!
Thank you for being our customers!!

**20%**

R18A-QGAD-6QVQ

**Redeem discount**

Expires on Feb 22, 2023

*Id.* Defendants then offered a 20% discount on Alt. Dash Pods for the "inconvenience." *Id.* Plaintiff became aware of this email because one of its customers responded to the email (which Plaintiff still had access to at the time) stating that it placed the order with Alternative Pods and wanted to know if it will still be delivered. *Id.*

65.     Defendants published this knowingly false statement. There was no cyberattack on Alternative Pods when they sent the Email Blast.  Rather, Defendants made these false statements under the guise of a fake cybersecurity threat for its own financial gain.

66.     Further, Defendants included another false statement (displayed below) in the Email Blast and included the "Alternative Pods & design" trademark.



*Id.* Defendants incorrectly state that Plaintiff's website, Alternative Pods, is "<u>FAKE</u>" and a

"<u>SCAM</u>" and to "<u>BEWARE</u>." It then directs Plaintiff's customers, to *Defendants'* website, Alt.

Dash Pods, which Defendants claim is the authentic website. *Id.*

67.     Accordingly, the Email Blast contained multiple blatantly false statements, which

were clear attempts by Defendants to harm Plaintiff and to deceive consumers by diverting them

to Defendants' websites, including Alt. Dash Pods, to gain a market advantage.

**V.      The Irreparable Damage Caused By Alt. Dash Pods on Plaintiff and Consumers.**

68.     Despite Plaintiff assuring its customers that Alternative Pods is legitimate and

operational, Plaintiff received, and continues to receive, numerous inquiries from confused

customers, who do not know where to go to purchase Plaintiff's products or who have questioned

the propriety of Plaintiff's website and its products.

69. For example, on February 22, 2023, one of Plaintiff's customers emailed Plaintiff asking this exact question. A copy of the February 22, 2023 email exchange is attached as Exhibit 5.

70. The customer indicated that he/she was "trying to be cautious since this whole situation is strange." *Id.* at 2. Plaintiff alerted the customer that the issue caused Plaintiff to get its legal team involved and switch platforms. *Id.* In response, the customer stated that "[i]t is concerning that there is someone answering emails from a scam site" and attached a screenshot of an email she received from Jessica Katz, who is an artificial sales representative as the email account is run by Calugher. *See id.* at 1, 3. According to the email, Calugher, on behalf of Alt. Dash Pods, told Plaintiff's customer that "[y]ou are safe to order from alternative-pods.com" (*i.e.*, Alt. Dash Pods). *See id.* at 3.

71. Additionally, on March 4, 2023, almost one month after Plaintiff discovered Alt. Dash Pods, one of Plaintiff's customers posted a review on Trust Pilot (a website for consumer reviews) for Alternative Pods and in the subject line wrote "Do NOT Trust!" A screenshot of the March 4, 2023 Review is displayed below.



72.     Additionally, on April 17, 2023, one of Plaintiff's customers posted a one-star review with the Better Business Bureau, which is displayed below.



73.     The existence of Alt. Dash Pods has continually confused Plaintiff's customers and harmed Plaintiff's business.

14

74.     For example, on July 18, 2023, a customer emailed Alternative Pods because a credit for a product return had yet to be applied to his account. The July 18-19, 2023 email exchange is attached as Exhibit 6. In explaining his frustration, the customer stated:

> this is my third time to contact you concering the 20/4 Juul menthol 5% two
> weeks ago you said you would get back to me. You are not the only vendor out
>
> there  .I have been a customer for over 4 years I would think that you would
> treat me better

*Id.* at 2-3. Alternative Pods responded that his order number was not with Alternative Pods and that he should contact the other website to help resolve the issue. *Id.* at 1.

75.     Additionally, on July 30, 2023, a consumer emailed Alternative Pods stating the below.

> I ordered 3 disposable vapes and the watermelon one when I hit it. It doesn't stop
> burning

The July-August, 2023 email exchange is attached as Exhibit 7. Plaintiff attempted to resolve the issue, but upon looking up the order number, Plaintiff discovered she did not place the order with Alternative Pods and informed her of the same, despite the fact that the confirmation email from Alt. Dash Pods included the "Alternative Pods & design" trademark and name. *See id.* at 2, 4.

76.     As a result of Defendants' improper actions, Plaintiff has lost and continues to lose customers who will no longer purchase products from Plaintiff or who do not trust either Alternative Pods or Alt. Dash Pods (*see e.g.*, the Trust Pilot Review referenced in Paragraph 71 above).

77.     No amount of money can restore the trust of Plaintiff's customers in Alternative Pods or the products it sells.

78.    What's more, the way Defendants advertise Alt. Dash Pods through Google only adds to the customer confusion. When searching "Alternative Pods" in Google's search engine, the first two results that appear are below.



The first result is the legitimate website, Alternative Pods. Then the next result, which also appears to be Alternative Pods, is listed. However, you have to look very closely to see that it is Alt. Dash Pods due to the hyphen in the website name.

79.    Further, to lure Plaintiff's customers to Alt. Dash Pods, Defendants have been offering aggressive discounts on the same products sold by Alternative Pods. A copy of the May 9, 2023 email from Alt. Dash Pods to one of Plaintiff's customers regarding a promotion is attached as Exhibit 8. The discount email also contains Plaintiff's "Alternative Pods & design" trademark, which is displayed below. *Id.*



Plaintiff has been forced to match those discounts to maintain its customer base, which continues to hurt Plaintiff's business.

80.     Defendants' infringing website (Alt. Dash Pods) that uses the "Alternative Pods & design" trademark and a virtually identical domain name remains operational. The infringing website also had the same overall elements of Plaintiff's trade dress that it has used for its Alternative Pods website, including the same layout, ads and promotions and same overall look and feel. All of this causes significant and ongoing confusion in the marketplace. Defendants are intentionally and unfairly trading off of the goodwill that Plaintiff has built in its "Alternative Pods & design" trademark and brand over the last 7 years.

81.     Further, by selling vape products without the required license, Defendants are in violation of state and federal law. Defendants' unlawful sales activities, all done under a trademark that is identical to Plaintiff's trademark, is causing damage to Plaintiff's brand. Not only have Defendants infringed Plaintiff's trademark, causing actual confusion as to the relationship between the parties and the source of the goods, but consumers have been deceived into believing that Defendants are legally authorized to sell vape products. Defendants continue conducting these illegal activities under Plaintiff's trademark, which causes significant harm to Plaintiff and its "Alternative Pods & design" trademark and brand.

## VI.     Defendants' Cyberattack against Plaintiff.

82.     On February 9, 2023, in response to Defendants' intentional attacks on Plaintiff's business, websites and customers, Plaintiff's counsel served Kostel, Albinos, Calugher and Polyulyak, with a cease and desist letter, demanding that they cease their tortious interference with Plaintiff's sales, false statements and deliberate and continued attempts to disrupt Plaintiff's operations (the "February 9 Demand"). A copy of the February 9 Demand is attached  as Exhibit 9.

83. The February 9 Demand set a deadline of February 10, 2023 by which Kostel, Albinos, Calugher and Polyulyak would need to comply, but they failed to respond. *See id.*

84. Accordingly, on February 21, 2023, Plaintiff's counsel sent a follow-up demand letter to Defendants' counsel (the "February 21 Demand"). A copy of the February 21 Demand is attached as <u>Exhibit 10</u>.

85. The February 21 Demand included a business proposal whereby Kostel, Albinos, Calugher and Polyulyak would cease its misconduct and the parties would continue working together under certain terms and conditions. *See id.*

86. On February 23, 2023, the response deadline for the February 21 Demand, Defendants' counsel stated a response to the February 21 Demand was forthcoming. Plaintiff never received a response that day.

87. Instead, around 2:00 a.m. on February 24, 2023, Alternative Pods became the victim of a cyberattack.

88. The cyberattack resulted in thousands of "bots" accessing Alternative Pods to place incomplete orders, overload Alternative Pods' bandwidth and crash Alternative Pods' server and website.

89. Upon information and belief, Defendants caused the cyberattack to further harm Plaintiff's business.

90. Defendants' conduct is deliberate, malicious and tortious in nature and has caused Plaintiff serious and irreparable harm.

**VII.    Defendants' Premeditated Plan to Steal the Websites from Plaintiff and their Continued Improper Conduct.**

91.    It was not until *after* the irreparable damage was done that Plaintiff learned all the premeditated steps Defendants took to sabotage Plaintiff's business, including secretly building their own businesses to directly compete with Plaintiff.

92.    For example, on February 1, 2023, a week before Defendants' improper takeover of the Websites, Osokin changed the contact information for Plaintiff's account with GoDaddy.com, LLC ('GoDaddy') for VapeHoop by modifying the account from Plaintiff's president, Mohamad Atef, to his information. GoDaddy is the domain registrar that Plaintiff used for VapeHoop.

93.    The next day, on February 2, 2023, Osokin, presumably per Defendants' instruction, submitted applications to BankCard USA Merchant Services, Inc. to change the merchant account for the Websites to his possession, thereby preventing Plaintiff from receiving the sales revenue from the Websites.

94.    In submitting these applications, Osokin wrote "[t]his is an ownership change and due to a dispute with the current owner of the company, we are requesting to expedite the approval process of this merchant account."

95.    Despite Osokin submitting the applications, he listed Calugher as the contact name, along with Calugher's email.

96.    Additionally, in early February 2023, Osokin, or someone acting on his behalf, changed the password of one of Plaintiff's company laptops to deny Plaintiff access. This laptop was purchased by Plaintiff for Osokin to use for his graphic design work on the Websites.

97.     In addition to the company laptop, Osokin also had custody and control over memory cards, which are property of Plaintiff and contain images of the products sold on the Websites.

98.     However, once Osokin stopped working for Plaintiff, Plaintiff was unable to locate the memory cards.

99.     Upon information and belief, Osokin, or someone acting on his behalf, stole the memory cards. Plaintiff was forced to start from scratch to create images for each product sold on its websites, including Alternative Pods.

100.    Moreover, on February 7, 2023, Calugher filed U.S. Trademark Application Serial No. 97785023 with the United States Patent and Trademark Office ("USPTO") for the trademark "Alternative Pods" (as seen in the screenshot below from the application) to cover all possible uses with all variations in color and font, irrespective of any logos.

## Alternative Pods

This trademark is identical to the word element of Plaintiff's mark, "Alternative Pods & design." A true and correct copy of the application filed with the USPTO is attached as Exhibit 11.

101.    As part of the application, Calugher filed a sworn declaration attesting to the truth of the following:

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;

- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;

- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date;

- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate;

- To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive;

- To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support; and

- The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

*Id.* at 21-22. As Plaintiff was the first party to use the "Alternative Pods & design" trademark, Plaintiff believes that the above sworn statement was signed by Calugher with an intent to deceive the USPTO, as he could not have made these statements in good faith.

102. Additionally, on February 15, 2023, Defendants sought to register "Alternative Pods" as an Illinois service mark, which again, infringes on Plaintiff's "Alternative Pods & design" trademark.

103. Even after Plaintiff properly regained access to the domain for Alternative Pods, Calugher tried to steal it again. GoDaddy continued to inform Calugher that Plaintiff and/or its president (Mr. Atef) is the proper registrant because Plaintiff provided the proper ownership documents.

## COUNT I
### Federal Trademark Infringement, Unfair Competition, False Designation of Origin and False Advertising against all Defendants
### (15 U.S.C. § 1125(a))

104.    Plaintiff re-alleges and incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

105.    Plaintiff alleges federal trademark infringement, unfair competition and False Designation of Origin under 15 U.S.C. § 1125(a)(1)(A).

106.    Plaintiff also alleges false advertising under 15 U.S.C. § 1125(a)(1)(B).

107.    Plaintiff has established rights in the "Alternative Pods & design" trademark, which is depicted below on the left as it appears on the Alternative Pods' website (*see* Ex. 1). The stolen mark as it appears on Defendants' website, Atl. Dash Pods, is depicted below on the right (*see* Ex. 3):



| Plaintiff's Mark | Infringing Mark |
|:---:|:---:|

108.    Plaintiff has invested substantial time, effort and financial resources promoting its "Alternative Pods & design" trademark in connection with the marketing and sale of its goods in interstate commerce.

109.    Plaintiff's "Alternative Pods & design" trademark has become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Plaintiff, the quality products it sells and its goodwill.

110.    Consumers recognize Plaintiff's "Alternative Pods & design" trademark and associate the "Alternative Pods & design" trademark with Plaintiff.

111.    Defendants have wrongfully assumed and used Plaintiff's "Alternative Pods & design" trademark in interstate commerce without Plaintiff's consent or authorization.

112.    Defendants' action were undertaken in bad faith and in a deliberate attempt to capitalize on the goodwill and reputation of Plaintiff and its "Alternative Pods & design" trademark and to mislead the public into believing that there is a connection, affiliation or association between Plaintiff and Defendants' brands and businesses.

113.    Defendants use Plaintiff's "Alternative Pods & design" trademark in interstate commerce while selling Defendants' products and services to mislead customers and divert sales from Plaintiff to Defendants' new businesses, such as Alt. Dash Pods.

114.    Defendants also wrongfully filed an application for trademark registration with the USPTO seeking to register Plaintiff's "Alternative Pods & design" trademark. *See* Ex. 11. Plaintiff's "Alternative Pods & design" trademark as it appears in Defendants' application for trademark registration is depicted below:

# Alternative Pods

115.    In addition to the illegal use of Plaintiff's "Alternative Pods & design" trademark, Defendants have also intentionally created customer confusion by creating and operating a website with a nearly identical domain name (Alt. Dash Pods) as Plaintiff's so as to wrongfully profit from Plaintiff's brand and goodwill.

116.    Defendants have used and continue to use the stolen mark and nearly identical domain name in connection with the sale, distribution or advertising of their products.

117.    Defendants' conduct has misled consumers into concluding that Defendants' products originate with or are authorized by Plaintiff, which has damaged both Plaintiff and consumers, including Plaintiff's customers.

118.     Plaintiff has no control over the quality of goods and products sold by Defendants or their services and because of the confusion caused by Defendants, Plaintiff has lost control over its valuable goodwill.

119.     Defendants' use of Plaintiff's "Alternative Pods & design" trademark and nearly identical domain name constitutes willful, deliberate and intentional trademark infringement.

120.     Additionally, by stealing Plaintiff's "Alternative Pods & design" trademark and applying it to a nearly identical website, Defendants misrepresented the geographical origin of the vape products they sell by making it appear to consumers that customers on Alt. Dash Pods were purchasing the vape products sold by Plaintiff through Alternative Pods.

121.     Defendants' unauthorized use of Plaintiff's "Alternative Pods & design" trademark and the nearly identical domain name in interstate commerce as described above constitutes trademark infringement and unfair competition under 15 U.S.C. § 1125(a) and has caused, and is likely to continue to cause, consumer confusion, mistake or deception.

122.     Defendants' unauthorized marketing and sale of its products in interstate commerce using Plaintiff's "Alternative Pods & design" trademark and the nearly identical domain name constitute a use of a false designation of origin or false representation that wrongfully and falsely designates Defendants' products and services as originating from or connected with Plaintiff in violation of 15 U.S.C. § 1125(a). Defendants' misconduct constitutes intentional, willful, knowing and deliberate unfair competition.

123.     As a direct and proximate result of Defendants' improper conduct, including unfair competition, Plaintiff has suffered and will continue to suffer irreparable damage to its business reputation and loss of income, revenue, profits and goodwill, while Defendants continue to unfairly profit from their theft.

124.     The damage to Plaintiff's business reputation and goodwill cannot be compensated by money.

125.     Unless enjoined, Defendants will continue to use Plaintiff's "Alternative Pods & design" trademark and nearly identical domain name, which will continue causing irreparable damage to Plaintiff for which Plaintiff has no adequate remedy at law.

126.     Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, including, among other injunctive relief, cancellation of any wrongful domains.

127.     Plaintiff is entitled under 15 U.S.C. § 1117(a) to recover from Defendants the actual damages Plaintiff has sustained, is sustaining, and/or is likely to sustain, Plaintiff's costs and Defendants' profits as a result of Defendants' wrongful acts.

128.     Defendants have refused to cease their unauthorized conduct despite Plaintiff's written requests that they do so. Defendants are on notice of their infringing actions and, therefore, their actions are a knowing, deliberate and willful infringement and make this an exceptional case under 15 U.S.C. § 1117(a) that warrants reasonable attorneys' fees to Plaintiff.

129.     Plaintiff is also entitled under 15 U.S.C. § 1117(a) to an enhanced award of up to three times its proven damages because Defendants' misuse was, and has been, intentional and willful and not all of Plaintiff's damages are quantifiable.

130.     Plaintiff is further entitled to recover prejudgment and post-judgment interest.

## COUNT II
### Common Law Trademark Infringement against all Defendants

131.     Plaintiff re-alleges and incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

132.    Plaintiff was the first to use its "Alternative Pods & design" trademark and therefore, it has priority to use the mark to the exclusion of any subsequent user, including Defendants.

133.    Defendants' unauthorized use of Plaintiff's "Alternative Pods & design" trademark, domain name and related branding is likely to deceive consumers as to the origin, source, sponsorship or affiliation of Defendants' products, goods and services and is likely to cause consumers to believe, contrary to fact, that Defendants' products, goods and services are sold, authorized, endorsed or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

134.    Defendants' acts constitute trademark infringement in violation of Illinois common law. Defendants will continue such infringement unless enjoined by this Court.

### COUNT III
### Common Law False Designation of Origin against all Defendants

135.    Plaintiff re-alleges and incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

136.    Defendants have falsely designated their products and services as affiliated with Plaintiff.

137.    Defendants' actions, as alleged herein, constitute false designation of origin in violation of Illinois common law, as the aforementioned acts constitute an intentional misappropriation of Plaintiff's "Alternative Pods & design" trademark, domain name, proprietary, confidential and trade secret information, reputation and commercial advantage.

138.    As a result of Defendants' conduct, Plaintiff has suffered substantial damage and irreparable harm constituting an injury for which Plaintiff has no adequate remedy at law.

139.    Unless this Court enjoins Defendants' conduct, Plaintiff will continue to suffer irreparable harm.

**COUNT IV**
**Cybersquatting (15 U.S.C. § 1125(d)) against all Defendants**

140.    Plaintiff re-alleges and incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

141.    Plaintiff is the owner of the domain name "Alternative Pods" and all associated marks (including the "Alternative Pods & design" trademark) and related branding.

142.    Defendants have registered and are using the domain name "*Alternative – Pods*" in bad faith with the intent to wrongfully profit from Plaintiff's nearly identical domain name, mark, branding and goodwill.

143.    Defendants were aware of Plaintiff's use of the domain name "Alternative Pods" and of Plaintiff's rights related to the domain name and all associated marks, logos and related branding when Defendants chose to create a website with a near identical name — the *dash* is hardly a distinction.

144.    Defendants intended to divert consumers looking for Plaintiff's products online to Defendants' websites and new businesses by playing off the similarity of the website names and exploiting customer confusion.

145.    Defendants are intentionally using customer confusion for commercial gain.

146.    Defendants' improper conduct has directly and proximately caused substantial, immediate and irreparable harm and injury to Plaintiff, and to Plaintiff's goodwill and reputation.

147.    Plaintiff seeks relief and has no adequate remedy at law.

148.     Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, cancellation of any wrongful domain registrations.

149.     As a result of Defendants' wrongful conduct, Plaintiff is entitled under 15 U.S.C. § 1117(a) to recover from Defendants the actual damages Plaintiff has sustained, is sustaining, and/or is likely to sustain, as well as Plaintiff's costs and Defendants' profits.

150.     Defendants have refused to stop their unauthorized conduct despite Plaintiff's requests. Defendants are on notice of their infringing actions and, therefore, their knowing, deliberate and willful infringement make this an exceptional case under 15 U.S.C. § 1117(a) that warrants reasonable attorneys' fees to Plaintiff.

151.     Plaintiff is also entitled under 15 U.S.C. § 1117(a) to an enhanced award of up to three times its proven damages because Defendants' misuse was, and has been, intentional and willful and not all of Plaintiff's damages are quantifiable.

152.     Alternatively, Plaintiff is entitled to maximum statutory damages of $100,000 from Defendants for the wrong caused by the infringing domain name pursuant to 15 U.S.C. § 1117(d).

153.     Plaintiff is further entitled to recover prejudgment and post-judgment interest.

**COUNT V**
**Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836) against all Defendants**

154.     Plaintiff re-alleges and incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

155.     The Defend Trade Secrets Act (18 U.S.C. § 1836) prohibits the misappropriation of trade secrets.

156.     Through research, experience and development, Plaintiff owns proprietary, confidential and trade secret information including customer databases for each of the Websites.

28

The data contains information such as customer names, emails, money spent on each Website, the products they purchase and other relevant information that is used to streamline Plaintiff's business and maintain customer relationships.

157.    Prior to Plaintiff's involvement with Defendants, Plaintiff's customer databases contained information for roughly 20,000 customers.

158.    The customer databases allow Plaintiff to determine how much inventory to buy based on which products its customers are purchasing from the Websites.

159.    The customer databases are password protected and stored on the respective platforms for each Website. The databases include proprietary information and valuable trade secrets and are highly confidential. Access to the databases was restricted to only key personnel.

160.    Plaintiff's proprietary, confidential and trade secret information is valuable to Plaintiff and relates to goods and services Plaintiff offers to consumers in, and/or during, interstate and foreign commerce.

161.    Plaintiff's proprietary, confidential and trade secret information derives independent economic value from not being generally known to others and not being readily ascertainable through proper means by others.

162.    Plaintiff has spent considerable time, energy and monetary resources to develop its trade secrets.

163.    Plaintiff took reasonable steps to safeguard its proprietary, confidential and trade secret information including, but not limited to, restricting access to the information, limiting the participants in marketing strategy meetings, maintaining possession of the proprietary, confidential and trade secret information and creating layered passwords for computers, accounts and databases storing proprietary, confidential and trade secret information.

164.    At Plaintiff's direction and due to its agreement with Defendants, Defendants gained access to Plaintiff's trade secrets, methods and strategies while serving as independent contractors of Plaintiff.

165.    However, Defendants have now, without authorization, used Plaintiff's proprietary, confidential and trade secrets to compete with Plaintiff and to gain an unfair advantage in the marketplace.

166.    Defendants owe a duty to Plaintiff to maintain the secrecy of Plaintiff's proprietary, confidential and trade secret information based on the nature of the information, the parties' course of dealing and the parties' implied agreement to keep the information private and away from others.

167.    Despite any duties or agreements, Defendants willfully misappropriated Plaintiff's proprietary, confidential and trade secret information and used the information to unfairly compete with and harm Plaintiff.

168.    Defendants have enjoyed, and continue to enjoy, a significant competitive advantage in the marketplace as a result of Defendants' misappropriation of Plaintiff's proprietary, confidential and trade secret information.

169.    Defendants' misappropriation of Plaintiff's trade secrets was willful and malicious.

170.    As a direct and proximate result of Defendants' misappropriation of Plaintiff's proprietary, confidential and trade secret information, Plaintiff has suffered and will continue to suffer injury, including but not limited to actual damages and immediate and irreparable harm until Defendants are ordered to return Plaintiff's proprietary, confidential and trade secret information and are enjoined from further possession, use and disclosure of the confidential information.

171.     Plaintiff has been and will continue to be, irreparably harmed, and has suffered monetary damages in an amount to be determined at trial.

172.     As a result of Defendants' violation of the Defend Trade Secrets Act, Plaintiff is entitled, among other remedies, to an order requiring the return of Plaintiff's information to Plaintiff and an injunction pursuant to 18 U.S.C. § 1836(b)(3)(A) prohibiting further possession, use and disclosure of such confidential information.

173.     Plaintiff is entitled under 18 U.S.C. § 1836(b)(3)(B)(i)(I) and (II) to damages in the amount of the actual loss caused by Defendants' misappropriation as well as damages for unjust enrichment caused by the same, to the extent it is not encompassed within the damages for actual loss.

174.     Alternatively, Plaintiff is entitled under 18 U.S.C. § 1836(b)(3)(B)(ii) to damages in the amount of a reasonable royalty and reimbursement for Defendants' unauthorized use of the confidential information.

175.     As a result of Defendants' willful and malicious misappropriation, Plaintiff is entitled under 18 U.S.C. § 1836(b)(3)(C) to exemplary damages of two times the damages awarded under 18 U.S.C. § 1836(b)(3)(B).

### <u>COUNT VI</u>
**Misappropriation of Trade Secrets under the Illinois Trade Secrets Act (765 ILCS 1065/1 *et. seq.*) against all Defendants**

176.     Plaintiff re-alleges and incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein

177.     The Illinois Trade Secrets Act prohibits the misappropriation of trade secrets.

178.     Plaintiff's confidential and proprietary information is protected in whole or in part as a trade secret within the meaning of the Illinois Trade Secrets Act.

179. Defendants have used Plaintiff's proprietary, confidential and trade secrets to compete with Plaintiff and to gain an unfair advantage in the marketplace.

180. Defendants have willfully misappropriated Plaintiff's proprietary, confidential and trade secret information in the manners alleged herein and used the information to unfairly compete with and harm Plaintiff.

181. As a direct and proximate result of Defendants' misappropriation of Plaintiff's proprietary, confidential and trade secret information, Plaintiff has been and will continue to be, irreparably harmed, and has suffered monetary damages in an amount to be determined at trial.

182. A preliminary injunction and/or permanent injunction is necessary to prevent further harm to Plaintiff. Plaintiff has no adequate remedy at law. Plaintiff is entitled to a preliminary and/or permanent injunction under 765 ILCS 1065/3.

183. Plaintiff is entitled to damages, including the actual loss Plaintiff incurred, due to Defendants' misappropriation and the unjust enrichment that resulted under 765 ILCS 1065/4(a).

184. Alternatively, Plaintiff is entitled to a reasonable royalty and reimbursement for Defendants' unauthorized use of Plaintiff's trade secret information under 765 ILCS 1065/4(a).

185. Further, pursuant to 765 ILCS 1065/4(b), Plaintiff is entitled to double the damages awarded by the Court under 765 ILCS 1065/4(a) above because Defendants' misappropriated Plaintiff's trade secrets willfully and maliciously.

186. Additionally, due to Defendants' willful and malicious misappropriation, Plaintiff is entitled to reasonable attorneys' fees under 765 ILCS 1065/5.

## COUNT VII
### Unfair Competition under the Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq*.) against all Defendants

187. Plaintiff re-alleges and incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

188.     Defendants' actions, as alleged herein, constitute unfair trade practices in violation of 815 ILCS 510/1 *et seq.* in that Defendants' conduct is likely to deceive, mislead and confuse consumers as to the source and sponsorship of Defendants' products and/or services.

189.     Defendants had actual and constructive notice that Plaintiff's "Alternative Pods & design" trademark, domain name and proprietary, confidential and trade secret information was to be used exclusively in Plaintiff's business.

190.     Despite this knowledge, Defendants willfully engaged in unfair trade practices in violation of Illinois law.

191.     By publishing false and misleading representations directly to Plaintiff's customers via the Email Blast, Defendants engaged in deceptive trade practices in the course of their business by disparaging Plaintiff, Alternative Pods and the vape products it sells. *See* 815 ILCS 510/2(a)(8).

192.     Defendants engaged in deceptive trade practices in the course of their business by engaging in other conduct which similarly created a likelihood of confusion or misunderstanding. *See* 815 ILCS 510/2(a)(12).

193.     Defendants published false and deceiving information in the Email Blast stating that Alternative Pods is "FAKE" a "SCAM" and to "BEWARE." *See* Ex. 4. Defendants further falsely stated that their website, Alt. Dash Pods, is "AUTHENTIC." *See id.*

194.     In the same email, Defendants also published the following false statement below about a fake cyberattack and offered a 20% discount on Alt. Dash Pods to compensate Plaintiff's customers for the "inconvenience."

Attention all our valued customers. Our Website became a victim of cyber attack. We are working hard to recover back. All your accounts and information are secured and saved under new domain address: alternative-pods.com - website name! Try to avoid the website until you will get a new email!

For all your inconvenience you can use the following code and save with us!!
Thank you for being our customers!!

# 20%

R18A-QGAD-6QVQ

**Redeem discount**

Expires on Feb 22, 2023

*Id.*

195.    In addition to the above, Defendants have made and, upon information and belief, continue to make false statements about Plaintiff.

196.    Defendants' false statements are likely to cause confusion and misunderstanding because such statements falsely label Alternative Pods as a "scam" and "fake," and mislead Plaintiff's customers. These deceptive statements are a direct attack on Plaintiff's business and products by causing consumers to believe that Plaintiff's vape products listed on the website are not real and in fact are just a ploy by a scammer to make money without actually selling any products.

197.    Defendants knew that Alternative Pods was not under any cyberattack and that Alternative Pods (and the products Plaintiff was selling) was not a scam, yet Defendants crafted

these false and deceptive statements to benefit their businesses by directing Plaintiff's customers to their website, Alt. Dash Pods.

198.    Accordingly, Defendants' conduct in spreading deceiving information was not only negligent, but it was also done with actual malice.

199.    Plaintiff continues to receive inquiries from concerned customers who might go elsewhere to purchase vape products or that believe Defendants' false statements and as a result, order products directly from Defendants. Further, Plaintiff continues to learn of new improper actions committed by Defendants to attack Alternative Pods, Plaintiff's products and customer base and unfairly compete for its customers.

200.    Defendants' unauthorized use of Plaintiff's "Alternative Pods & design" trademark, domain name and related branding has caused, and is causing, consumer confusion and demonstrates Defendants' willful intent to pass off their goods and services as those of Plaintiff's in violation of 815 ILCS 510/2(a)(1).

201.    Such conduct is also likely to cause confusion, mistake or deception as to the source, affiliation, connection or association of Defendants' goods with Plaintiff, or as to the sponsorship, approval or affiliation of Defendants with Plaintiff, in addition to engaging in other conduct that similarly creates a likelihood of confusion or misunderstanding in violation of 815 ILCS 510/2 (a)(2), (a)(3) and (a)(12).

202.    Despite Plaintiff's requests, Defendants have continued using Plaintiff's "Alternative Pods & design" trademark, domain name and related branding. Defendants' actions constitute knowing, deliberate and willful infringement on Defendants' part and make this an exceptional case under 815 ILCS 510/3.

203.     As a result of Defendants' knowing, deliberate and willful infringement of Plaintiff's rights, Plaintiff has been irreparably harmed and Plaintiff has no adequate remedy at law.

204.     As a result of Defendants' false and deceptive statements, Plaintiff has suffered and continues to suffer damages, including, but not limited to, a loss to its reputation, goodwill, customer base, profits and harm to its operations.

205.     Defendants will continue their misconduct unless enjoined by this Court.

206.     Plaintiff is entitled to both injunctive relief and reasonable attorneys' fees and costs from Defendants because they willfully engaged in a deceptive trade practice under 815 ILCS 510/3.

<u>**COUNT VIII**</u>
**Violation of the Illinois Consumer Fraud and Deceptive Businesses Practices Act (815 ILCS 505/1, *et seq.*) against all Defendants**

207.     Plaintiff re-alleges and incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

208.     Defendants' false statements and their creation and continued operation of Alt. Dash Pods constitute deceptive trade practices under 815 ILCS 505/2.

209.     Defendants conducted such deceptive trade practices to the market generally (*i.e.*, consumers) through online sales to the public, and as a result, such deceptive acts implicate consumer protection concerns.

210.     Defendants intended for consumers to rely on their deceptive practices so that consumers would purchase products from Alt. Dash Pods, which allowed Defendants to wrongfully profit from such conduct in the process.

211.     Moreover, by selling vape products without the required license in violation of state and federal law, Defendants have unlawfully, but without consumers' knowledge, conducted business.

212.     Not only have Defendants infringed the "Alternative Pods & design" trademark, causing actual confusion as to the relationship between the parties and the source of the goods, but consumers, including Plaintiff's customers, have been deceived into believing that Defendants are legally authorized to sell vape products.

213.     Further, this is consumer protection concern because Defendants, through the infringing website (Alt. Dash Pods), caused consumers to mistakenly believe that Defendants were acting on behalf of Plaintiff, or that they were affiliated with, sponsored by or endorsed by Plaintiff.

214.     Plaintiff is entitled to injunctive and monetary relief, which would serve the interests of consumers by preventing consumers from purchasing on Alt. Dash Pods. Not only are Defendants not affiliated with Plaintiff in any way, but Defendants are not legally authorized to sell vape products to consumers.

215.     As a direct and proximate result of Defendants' misconduct, Plaintiff has suffered and continues to suffer actual damages, including, but not limited to, loss to its reputation, goodwill, customer base, profits, revenue and harm to its operations.

## COUNT IX
## Business Defamation/Trade Libel against all Defendants

216.     Plaintiff re-alleges and incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

217.     Defendants published multiple false statements in the Email Blast by stating that: (i) Alternative Pods is "FAKE" a "SCAM" and to "BEWARE" (ii) Defendants' website, Alt. Dash Pods, is "AUTHENTIC"; and (iii) Alternative Pods suffered a cyberattack. *See* Ex. 4.

218. These statements caused confusion and misunderstanding and were a direct attack on Plaintiff's business and products because such statements falsely labeled Alternative Pods as a "scam" and "fake." Such false statements led Plaintiff's customers to believe that they should not purchase Plaintiff's products because if they do, they will be scammed.

219. Defendants made themselves a competitor by illegal means. They have made false and demeaning statements regarding the quality of Plaintiff's products to cause Plaintiff's customers to lose trust in Plaintiff in an effort to steal its customers.

220. Alternative Pods is a well-established for profit website and at the time of the Email Blast, Alternative Pods had not suffered any cyberattack.

221. Defendants have made and, upon information and belief, continue to make false statements about Plaintiff.

222. Defendants negligently made such false statements because they failed to act as a reasonably careful person under the circumstances would act. Defendants knew that at the time of the Email Blast, Alternative Pods was not under any cyberattack nor was Alternative Pods (and the products Plaintiff was selling) a scam, yet they crafted these false statements to benefit themselves by directing Plaintiff's customers to their website, Alt. Dash Pods.

223. These false statements are defamation *per se* because they prejudice Plaintiff's business. Falsely labeling Alternative Pods as a "scam" and "fake" led Plaintiff's customers to believe that they should not purchase Plaintiff's products because if they do, they will be scammed.

224. These false statements concern the quality of Plaintiff's products and/or services on Alternative Pods.

225. Defendants' false statements are unprivileged publications that were made to third parties, Plaintiff's customers.

226.    Defendants conduct in spreading deceiving information was not only negligent, but it was also done with actual malice as Defendants knew these statements were false.

227.    Plaintiff continues to receive inquiries from concerned customers who have gone, or may go, elsewhere to purchase vape products or that believe Defendants' false statements and as a result order products directly from Defendants. Further, Plaintiff continues to learn of new improper actions committed by Defendants to attack Alternative Pods, Plaintiff's products and customer base and unfairly compete with its customers.

228.    As a result of Defendants' defamatory statements, Plaintiff has suffered and continues to suffer damages, including, but not limited to, loss of reputation, goodwill, customer base and profits and harm to its operations.

## COUNT X
### Tortious Interference with Prospective Business Relationship against all Defendants

229.    Plaintiff re-alleges and incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

230.    Through the use of Plaintiff's confidential, proprietary and trade secret information, Defendants have induced Plaintiff's customers to stop purchasing their vape products from Plaintiff's websites and to instead direct their business to Defendants' businesses.

231.    Defendants are using Plaintiff's confidential, proprietary and trade secret information to develop marketing and sales strategies that will directly and unfairly undermine Plaintiff's own efforts to effectively market to its customers.

232.    Defendants' conduct is improper and constitutes tortious interference with Plaintiff's business relationships.

233.    Plaintiff has a reasonable expectation of entering into a valid business relationship with its existing and prospective customers on the Websites.

234.    Defendants know that the Websites are the main source of where and how Plaintiff sells vape products because Defendants were hired by Plaintiff to assist with the sales.

235.    However, Defendants intentionally interfered with Plaintiff's business and operations and unfairly competed with Plaintiff by: (i) redirecting consumers from Alternative Pods to entities or persons owned or controlled by Defendants, including by creating and operating Alt. Dash Pods and making false statements directly to Plaintiff's customers in the Email Blast; and (ii) preventing Plaintiff from having access to VapeHoop and ZiipStock, which were owned and controlled by Plaintiff.

236.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer, damages, including a loss to it business, commercial opportunities, reputation, goodwill, customer base and profits.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all matters and issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Limitless Accessories, Inc., respectfully requests that this Court enter a judgment in its favor and against Defendants as follows:

A.    Defendants violated Sections 43(a) and 43(d) of the Lanham Act, 15 U.S.C. §§ 1125(a) and 1125(d) and award to Plaintiff under 15 U.S.C. § 1117(a): (i) up to three times the amount of Plaintiff's actual damages; (ii) Defendants' profits as a result of Defendants' wrongful acts; (iii) Plaintiff's costs in this action; (iv) Plaintiff's reasonable attorneys' fees as this is an exceptional case; and (v) prejudgment and post-judgment interest.

B.    Defendants violated Illinois common law false designation of origin and therefore Plaintiff is awarded damages in an amount to be proven at trial.

C.      Defendants willfully engaged in unfair competition or a deceptive trade practice under the Illinois Deceptive Trade Practice (815 ILCS 510/3) and, therefore, Plaintiff is entitled to attorneys' fees and costs from Defendants.

D.      Defendants violated Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2) and, therefore Plaintiff is entitled to actual damages and reasonable attorneys' fees and costs.

E.      Defendants violated Illinois common law trademark infringement and the Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.*).

F.      Declare the customer databases as trade secrets under the Defend Trade Secrets Act (18 U.S.C. § 1836) and Illinois Trade Secrets Act (765 ILCS 1065/1 *et seq.*).

G.      Defendants' conduct be declared willful and malicious under the Defend Trade Secrets Act and Illinois Trade Secrets Act.

H.      Damages be doubled under the Defend Trade Secrets Act and Illinois Trade Secrets Act.

I.      Defendants pay Plaintiff money damages consisting of actual loss and unjust enrichment, or a reasonable royalty for Defendants' unauthorized use of a trade secret, under applicable principles of common law and equity, the Defend Trade Secrets Act and the Illinois Trade Secrets Act.

J.      Granting an injunction permanently enjoining Defendants, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns and all those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

(i)      Engaging in any activity that infringes Plaintiff's marks, including the "Alternative Pods & design" trademark;

(ii)     Injuring Plaintiff's business reputation and goodwill associated with Plaintiff's marks (including the "Alternative Pods & design" trademark) and from otherwise unfairly competing, directly or indirectly, with Plaintiff;

(iii)    Making or displaying any statement, representation or depiction that is likely to lead the public or the trade to believe that (i) Defendants' goods are in any manner approved, endorsed, licensed, sponsored, authorized or franchised by or associated, affiliated or otherwise connected with Plaintiff; or (ii) Plaintiff's goods and services are in any manner approved, endorsed, licensed, sponsored, authorized or franchised by or associated, affiliated or otherwise connected with Defendants;

(iv)    Registering or applying to register any trademark, service mark, domain name, trade name or other source identifier or symbol of origin consisting of or incorporating the infringing the phrase "Alternative Pods" or any other mark that infringes or is likely to be confused with Alternative Pods, or any goods and services of Plaintiff, or Plaintiff as their source;

(v)     Aiding, assisting or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (i) through (iv) above.

K.     Granting such other and further relief as the Court may deem proper to prevent the public from deriving the false impression that any goods manufactured, sold, distributed, licensed, marketed, advertised, promoted or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized or franchised by or

associated, affiliated or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods and services.

L.      Directing Defendants to immediately cease all display, distribution, promotion, sale, offer for sale and/or use of any and all materials that feature or bear any designation or mark comprising of or incorporating "Alternative Pods" or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's mark (including the "Alternative Pods & design" trademark), and to immediately remove them from public access and view.

M.      Declare Plaintiff the owner of the Websites as an actual case or controversy has arisen between the parties because Defendants appear to dispute Plaintiff's ownership.

N.      Awarding Plaintiff $100,000 in statutory damages from Defendants in accordance with Section 43(d) of the Lanham Act, 15 U.S.C. § 1117(d).

O.      Directing Defendants to transfer to Plaintiff the Alt. Dash Pods (*i.e.*, alternative-pods.com) domain name.

P.      Directing that Defendants account to and pay over to Plaintiff all profits realized by their wrongful acts in accordance with 15 U.S.C. § 1117(a), enhanced as appropriate to compensate Plaintiff for the damages they caused.

Q.      Awarding Plaintiff punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement.

R.      Awarding Plaintiff its costs and declaring that this is an exceptional case pursuant to 15 U.S.C. § 1117(a) and therefore awarding Plaintiff its reasonable attorney's fees.

S.      Awarding Plaintiff damages on its common law claims.

T.     Awarding Plaintiff interest, including prejudgment and post-judgment interest, on

the foregoing sums.

U.     Awarding such other and further relief as the Court deems just and proper.

Dated: October 31, 2023                    Respectfully submitted,

                                           **LIMITLESS ACCESSORIES, INC.**

                                           By:   */s/ Derrick M. Thompson, Jr.*
                                                 One of Its Attorneys

Derrick M. Thompson, Jr. (ARDC #6287536)
(dthompson@taftlaw.com)
Bianca E. Ciarroni (ARDC #6329550)
(bciarroni@taftlaw.com)
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 527-4000